**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Thomas W. Meacham,**

           *Plaintiff,*

**v.**

**United Healthcare Insurance Company of Ohio,**

           *Defendants.*

Case No. 3:06-cv-089

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DOC. 37, AND TERMINATING CASE.**

---

Pending before the Court in this case is Defendants' Motion for Summary Judgment. Doc. 37. Therein, Defendants request that summary judgment be granted on Plaintiff's claims of bad faith, promissory estoppel, and punitive damages. Defendant asserts that it is entitled to judgment on each of the state law claims, and then asserts as an alternative basis for granting the motion, that Plaintiff's claims are preempted by ERISA, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and that Plaintiff cannot prevail on any claim allowed under that law. Because Plaintiff's claims are preempted by ERISA, the Court will grant Defendants' motion.

**I.  Background**

Plaintiff Thomas W. Meacham was a subscriber under a Certificate of Coverage (including a 2002 amendment thereto) issued by Defendants United Healthcare Insurance Company of Ohio and United Healthcare of Ohio, Inc. The Policy provided both Network and Non-Network benefits

(i.e., services received from a non-network provider) as paid based upon the percentage of Eligible Expenses, and the insured is responsible for all remaining balances.

In early 2004, Plaintiff was informed that he would be required to undergo serious back surgery in order to relieve excruciating pain in his back and leg. Plaintiff made efforts to locate a physician to perform the surgery within network, including interviewing four local neurosurgeons and orthopedic surgeons. All of the within network surgeons interviewed by Plaintiff indicated that the procedures they would employ were extremely invasive, potentially crippling, and if successful, would result in extensive hospital stays and a minimum of six (6) months in recovery.

For this reason, Plaintiff decided to obtain medical services from an out-of-network provider because United Healthcare had no physicians within network who could perform the required surgery on a less invasive basis, as out-patient surgery, and in a manner that gave Plaintiff a reasonable prospect of living his everyday life without constant pain in his back and leg.

Plaintiff claims that on March 30, 2004, United Healthcare was notified of Plaintiffs' then upcoming out-patient procedure with out-of-network surgeons located in Tampa, Florida, and United Healthcare gave assurances to Plaintiff and his then prospective providers, that all services related to the procedure were covered under the Policy at eighty percent (80%) with a total out-of-pocket expense by Plaintiff of not more than Two Thousand Dollars ($2,000.00). United Healthcare's in-house notes of the conversations, however, record different information having been relayed in response to inquiries regarding coverage.

On each of April 19, 2004, May 25, 2004, May 27, 2004, June 15, 2004 and June 17, 2004, Plaintiff underwent successive related parts of the out-patient procedure and, in connection therewith, received services from GulfCoast Orthopedic Center, PT Medical Development Corp and American Medical Center ("Providers"). Plaintiff traveled to Tampa, Florida at his own expense, and paid

$1,800.00 in out-of pocket expenses relating to his surgery. United Healthcare has paid the Providers at a combined amount equal to Fifty Percent (50%) of the their fees and/or bills for services.

Despite Plaintiff's First and Second Level Appeals, United Healthcare refuses to pay the Providers at 80% as Plaintiff claims it indicated it would. Plaintiff seeks an award of damages "for an amount in excess of $40,000.00."

The Policy was written initially in 2002 in the names of Melbourne M. Meacham and Thomas W. Meacham who then owned and operated an Ohio corporation doing business as Midwest Marketing, Inc. ("Midwest"). At the time of the initial purchase, Plaintiff owned 50% of Midwest and his father, Melbourne M. Meacham, owned the other 50% of Midwest. Melbourne M. Meacham died in 2003. In 2004, when the Policy was reinstated, Midwest was 55% owned by Plaintiff and 45%-owned by David Johnson. (Plaintiff's Exhibit A, Affidavit of Thomas W. Meacham). While the insurance group is known as "Melbourne M. Meacham & Thomas W.," Ex. 1-E at 9, individuals besides the Meachams were enrolled as employees on the Meachams' group plan. Doc. 54-3, Def. Ex. E-4.

Eligible expenses are determined in accordance with United Healthcare's reimbursement policy guidelines, which are developed in United Healthcare's discretion, following evaluation and validation of all provider billings in accordance with one or more of the following methodologies: "(1) as indicated in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association; (2) as reported by generally recognized professionals or publications; (3) as used for Medicare; (4) as determined by medical staff and outside medical consultants pursuant to other appropriate source or determination that [United HealthCare] accept[s]." *See* Doc. 38, Ex. 1-A, p. 73; Ex. 1-B, p. 75. The Plan states that United HealthCare has "sole and exclusive discretion (subject to any appeals process under law) to do all

of the following: interpret Benefits under the Policy; interpret the other terms, conditions, limitations and exclusions set out in the Policy, including this Certificate of Coverage and Riders or Amendments; [and] make factual determinations related to the Policy and its Benefits." *See* Doc. 38, Ex. 1-A, p. 65; Ex. 1-B, p. 69.

Defendant has explained that the final amount paid reflects adjustments to the submitted amount to reflect usual and customary charges for the area, but in other instances were allowed at network rates, when the provider was a Florida in-network provider.

## II.  Analysis

As an initial matter, the Court must determine whether the instant matter is preempted by ERISA. Against Defendant's assertion that the insurance policy at issue is an ERISA governed plan, Plaintiff counters with the assertion that a plan covering a working owner of a corporation is not covered by ERISA unless the corporation's benefit plan also covers at least one other non-owner employee. Doc. 45 at 14 (citing *Yates v. Hendon*, 124 S. Ct. 1330 (2004)). This assertion seems true, but, as Defendant has shown, at least three employees besides the Meachams are covered by the instant plan. Wherefore, Plaintiff's claims are preempted.[1]

When an ERISA plan administrator's decision to deny benefits is brought before a court for review, the court generally engages in *de novo* review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, courts apply the arbitrary and capricious standard when the plan administrator is given discretionary authority to determine eligibility for benefits or to construe terms of the plan. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). The Sixth Circuit has noted that arbitrary and capricious review is the least demanding form of judicial review

---

[1] The Court notes that if this conclusion is wrong, then it lacks diversity jurisdiction over Plaintiff's claims, as all parties are Ohio residents. See Doc. 1 ¶¶ 1-4.

of an administrative action. See *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). When applying arbitrary and capricious review, courts affirm administrative decisions "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome…." *Davis*, 887 F.2d at 693.

In the present case, the plan expressly grants United Healthcare "sole and exclusive discretion (subject to any appeals process under law) to do all of the following: interpret Benefits under the Policy; interpret the other terms, conditions, limitations and exclusions set out in the Policy, including this Certificate of Coverage and Riders or Amendments; [and] make factual determinations related to the Policy and its Benefits." *See* Doc. 38, Ex. 1-A, p. 65; Ex. 1-B, p. 69. Thus, the plan affords United Healthcare discretion in determining employees' claims for benefits and this Court will use the arbitrary and capricious standard upon review of the administrative record. Consequently, since the instant plan gives the plan administrator discretionary authority to determine eligibility for benefits, this Court will affirm the award, even if Mr. Meacham demonstrates he was entitled to benefits, as long as the plan administrator's decision was not arbitrary and capricious. In the instant case, Defendant has explained the reasons for its decisions. As Plaintiff admits in his response, reasonable minds can come to different conclusions as to the proper amounts to pay out in this case. Doc. 45 at 7.

Plaintiff has not briefed the question of estoppel under ERISA, but the Court will venture the following analysis. Assuming estoppel is a viable theory in ERISA health benefit action, as it is in welfare benefit actions, see *Sprague v. General Motors, Inc.*, 133 F.3d 388, 403 (6th Cir.1998), the elements of an estoppel claim are as follows:

> (1)  there must be conduct or language amounting to a representation of material fact;

> (2) the party to be estopped must be aware of the true facts;
>
> (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends;
>
> (4) the party asserting the estoppel must be unaware of the true facts; and
>
> (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 428 -29 (6th Cir. 2006).

At the same time, although equitable estoppel may be a viable theory in ERISA cases, "[p]rinciples of estoppel ... cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Putney v. Medical Mutual of Ohio*, 111 Fed. Appx. 803, 807 (6th Cir. 2004) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (*en banc*). Additionally, an estoppel claim cannot be considered where it is not supported by extrinsic evidence showing a clear intent to modify the ERISA plan. "Oral statements...are not sufficient. *Id.* (citing *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133 (6th Cir. 1993), and *Musto v. American General Corp.*, 861 F.2d 897 (6th Cir. 1988). Finally, there must be evidence that Plaintiff "relied to h[is] detriment" on the insurance company's statement. *Lynde v. Blue Cross and Blue Shield Mut. of Ohio*, 1995 WL 242003, *4 (6th Cir. 1995).

In the instant case, the plan is not ambiguous as to the manners in which United Healthcare may determine benefits. Neither is there clear evidence of an intent to modify the plan. The Court also concludes from Plaintiff's assertions regarding the necessity of obtaining the surgery and the necessity of having provided by an out-of-network provider in Florida, that Plaintiff did not rely to

his detriment on the statement, as he possessed no choice in whether to pursue the procedure he had performed on him.

Wherefore, Defendant's Motion for Summary Judgment, Doc. 37, is **GRANTED**.  The instant matter is **ORDERED TERMINATED** from the docket of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio on Wednesday, September 26, 2007.


s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE